UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CECIL BREWINGTON
479 Tatoe Road
Willard, NC  27592

    and

Plaintiffs from Alabama:

JERRY COOPER
11654 Co. Rd. 59
Verbena, AL  36091

    and

ARTHUR GRIFFIN
225 Alpine Street
Brundidge, AL  36010

    and

CHARLIE H. HARRIS
213 Alpine Street
Brundidge, AL  36010

    and

WILLIAM LAMPLEY
Rt. 3 Box 748
Brundidge, AL  36010

    and

HENRY SIMMONS
Rt. 2, Box 2
Banks, AL  36005-9201

    and

WILLIE FRANK WHEELER
Rt. 3, Box 585
Brundidge, AL  36010

    and

PAUL WINGARD
Rt. 2 Box 185-C
Goshen, AL  36035

    and

:
:
:
:

CASE NUMBER  1:98CV01693

JUDGE: Paul L. Friedman

DECK TYPE: Civil General

DATE STAMP: 07/07/98

:   Class Action Complaint

:   Containing 129 Plaintiffs/
    Class Representatives

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

```
ROY G. WOOD                            :
Rt. 2 Box 244
Goshen, AL  36035                      :

     and                               :

Plaintiffs from Arkansas:              :

ARTHUR AMOS                            :
P.O. Box 234
Altheimer, AR  72004                   :

     and                               :

RANSOM ARNOLD                          :
1190 Highway 121 N.
Moro, AR  72368                        :

     and                               :

WEST BONES, JR.                        :
Rt. 2, Box 34                          :
Holly Grove, AR  72069                 :

     and                               :

CLARENCE POLK                          :
Rt. 1, Box 258-C
Star City, AR  21667                   :

     and                               :

Plaintiffs from Georgia:               :

HUBERT BROWN                           :
CAROL JEAN BROWN
Route 1                                :
Whigham, GA  31797
                                       :
     and                               :

WILLIE HEAD, JR.                       :
Route 2, Box 229A
Pavo, GA  31778                        :
                                       :
     and                               :

ANDREW JACKSON                         :
Route 2, Box 2165
Morven, GA  31638                      :
                                       :
     and
```

2

```
CLEM JONES                        :
P.O. Box 358
Tyrone, GA  30290                 :

        and                       :

AARON MOBLEY                      :
P.O. Box 266
Quitman, GA  31643                :

        and                       :

Plaintiffs from Kansas:           :

THEODORE F.B. BATES               :
717 W. McFarland
Hill City, KS  67642              :

        and                       :

Plaintiffs from Louisiana:        :

WILBERT WALKER                    :
18490 LA Highway 417
Lettsworth, LA  70753             :

        and                       :

Plaintiffs from Michigan:         :

John M. DeCoudreaux               :
25619 76th Street
South Haven, MI  49090            :

        and                       :

Plaintiffs from Mississippi:      :

ROY H. ADAMS                      :
P.O. Box 516
Arcola, MS  38722                 :

        and                       :

LARRY ALEXANDER                   :
P.O. Box 217
223 N. Park Street                :
Merigold, MS  38759
                                  :

        and                       :

HERBERT C. ALLEN, JR.             :
Route 1, Box 321
Silver City, MS  39166
```

3

and

JAMES C. BACON                                    :
121 Bacon Cove                                    :
Camden, MS  39045                                 :

    and                        :

STANLEY BACON                                     :
128 Bacon Cove                                    :
Camden, MS  39045                                 :

    and                        :

W.E. BRANDON                                      :
2035 Cedar Road                                   :
Mound Bayou, MS  38762                            :

    and                        :

JOSEPH BROWN                                      :
Route 2, Box 51                                   :
Roxie, MS  39661                                  :

    and                        :

LEON E. BROWN                                     :
817 Lamar Avenue                                  :
Yazoo City, MS  39194                             :

    and                        :

WILLIE J. BURNS                                   :
615 Thomas Avenue                                 :
Yazoo City, MS  39194                             :

    and                        :

JAMES CARTHAN                                     :
P.O. Box 29                                       :
Tchula, MS  39169                                 :

    and                        :

JOSEPH CARTHAN                                    :
P.O. Box 29                                       :
Tchula, MS  39169                                 :

    and                        :

MICHAEL V. CHATMAN                                :
P.O. Box 804                                      :
Mound Bayou, MS  38762                            :

4

and                                           :

RONALD CLARKE                                 :
Route 2, Box 180
Tchula, MS   39169                            :

and                                           :

ALBERT J. COOPER                              :
P.O. Box 236
Anguilla, MS   38721                          :

and                                           :

ANDREW L. COOPER                              :
1034 Marcela Road
Belzoni, MS   39038                           :

and                                           :

ELIJAH COLE JR.                               :
115 Loring Rd.
Pickens, MS   39146                           :

and                                           :

HOUSTON COLEMAN                               :
1429 Cedar Road
Mound Bayou, MS   38762                       :

and                                           :

ROBERT COLEMAN                                :
1355 Cedar Road
Mound Bayou, MS   38762                       :

and                                           :

JIMMY L. CURRY                                :
P.O. Box 83
Hermanville, MS   39086                       :

and                                           :

ALFORT DAVIS                                  :
403 East 14th Street
Yazoo City, MS   39194-2625                   :

and                                           :

ADELL DAVIS Sr.                               :
1298 Thyatira Tyro Rd.
Senatobia, MS   38668                         :

5

                                        :

    and

ALICE DAVIS for                         :
HENRY DAVIS (deceased)                  :
707 H. Davis Road
Tchula, MS  39169                       :

    and                                 :

HAROLD L. DAVIS                         :
P.O. Box 607
COLDWATER, MS  38618                    :

    and                                 :

ONZIE GLEN                              :
5856 Loakfoma Road
Louisville, MS  39339                   :

    and                                 :

MARQUIS GRANT                           :
113 Royal Oak Rd.
Canton, MS  39046                       :

    and                                 :

WILLIAM HAMKLIN                         :
125 Hamklin Road
Canton, MS  39046                       :

    and                                 :

THETIS HARDY                            :
14 Hardy Road
Shaw, MS  38773                         :

    and                                 :

GEORGE HENDERSON                        :
505 Stimpbridge Road
Canton, MS  39046                       :

    and                                 :

CARY HOLMES                             :
P.O. Box 73
Bentonia, MS  39040                     :

    and                                 :

MARK A. HOUSTON                         :
Route 1, Box 144
Tillatoba, MS  38961                    :

                and                                    :

LEE ANDREW HOWARD                                      :
P.O. Box 323
Port Gibson, MS  39150                                 :

                and                                    :

OLLIE HUDSON                                           :
1517 Arnolds St.
Cleveland, MS  38732                                   :

                and                                    :

TOBIAS JENKINS                                         :
925 Mattingly Drive
Greenville, MS  38703                                  :

                and                                    :

CLINTON F. JOHNSON, Jr.                                :
1542 Fairwood Drive
Jackson, MS  39213                                     :

                and                                    :

GARRETT JOHNSON                                        :
860 Fire Town Road
Lexington, MS  39095                                   :

                and                                    :

SAMMY JOHNSON                                          :
185 S. Main Street
Drew, MS  38737                                        :

                and                                    :

WILLIE JOHNSON                                         :
6072 Holbrook Dr.
Jackson, MS  39106                                     :

                and                                    :

FREDDIE JONES                                          :
P.O. Box 148
Mayersville, MS  39113                                 :

                and                                    :

WILLIE E. LANE                                         :
436 Roberts Road
Canton, MS  39046                                      :

7

```
            and                        :

JAMES MADLOCK                          :
Route 1, Box 548
Merigold, MS  38759                    :

            and                        :

ANDRE MATHEWS                          :
1760 Highway 310
Waterford, MS  38685                   :

            and                        :

KENZIE McGINNIS                        :
Route 5, Box 188
Yazoo City, MS   39194                 :

            and                        :

CURTIS MILLER                          :
76 CR 7411
Booneville, MS   38829                 :

            and                        :

TED MILLER                             :
P.O. Box 4944
Greenville, MS   38701                 :

            and                        :

JESSIE MOORE                           :
P.O. Box 292
Tchula, MS  39169                      :

            and                        :

ROGERS B. MORRIS                       :
P.O. Box 567
Mound Bayou, MS   38762                :

            and                        :

CARL PERRY                             :
2001 S. Bishop Road
Boyle, MS  38730                       :

            and                        :

JAMES W. PIGGS                         :
P.O. Box 333
Glen Allen, MS   38744                 :
```

8

```
        and                          :

EDDIE REED                           :
P.O. Box 136
Grace, MS  38745                     :

        and                          :

JAMES SANDERS                        :
MATTIE SANDERS
143 Little Mound Bayou Road          :
Mound Bayou, MS  38762
                                     :

        and                          :

WILLIE E. SIAS                       :
R 2, BOX 443
Rolling Fork, MS  39159              :

        and                          :

OLIVER SHORT                         :
RT. 2, Box 134
Charleston, MS  38921                :

        and                          :

EDWARD SMITH                         :
P.O. Box 117
Sidon, MS  38954                     :

        and                          :

VERNON SMITH                         :
P.O. Box 519
Tchula, MS  39169                    :

        and                          :

W.C. SPENCER Jr.                     :
P.O. Box 34
Como, MS  38619                      :

        and                          :

McARTHUR STRAUGHTER                  :
P.O. Box 1254
Yazoo City, MS  39194                :

        and                          :
```

JOHNNIE THOMAS
P.O. Box 35
Grace, MS  38745                          :

                                          :

        and                               :

HARRY P. THURMOND                         :
P.O. Box 469
Tchula, MS  39149                         :

                                          :

        and                               :

WILLIAM WATKINS                           :
528 South Ross Rd.
Mound Bayou, MS  38262                    :

                                          :

        and                               :

BOBBY WELLS                               :
Route 2, Box 327
Charleston, MS  38921                     :

                                          :

        and                               :

                                          :

MICHAEL A. WHITE                          :
129-C Andrew Lane
Canton, MS  39046                         :

        and                               :

CARL WHITTINGTON                          :
4497 Hwy. 16, East
Canton, MS  39046                         :

        and                               :

CLEOTHA WILLIAMS                          :
P.O. Box 433
Shaw, MS  38773                           :

        and                               :

HERBERT WILLIAMS                          :
600 Flowtree Road
Vicksburg, MS  39156                      :

        and                               :

JOHN A. WILLIAMS, Jr.                     :
Post Office Box 72
Midnight, MS  39115                       :

        and                               :

10

ROBERT WILLIAMS                          :
SUSIE L. CROFT
805 Westside Drive                       :
Belzoni, MS  39038
                                         :

        and                              :

RAPHAEL L. WILLIAMS                      :
200 Perry Williams Road
Madison, MS  39110                       :

        and                              :

SANDERS WILLIAMS                         :
Route 1 Box 90
Rosedale, MS  38769                      :

        and                              :

FREDDIE L. WINTERS                       :
P.O. Box 1042
Cleveland, MS  38732                     :

        and                              :

PERRY WOODS                              :
P.O. Box 118
Shaw, MS  38773                          :

        and                              :

Plaintiffs from Missouri:                :

WILLIE & GRETHEL RICHARDSON              :
ERIC RICHARDSON
DIONYSIA RICHARDSON-SMITH                :
Route 1, Box 60
New Madrid, MO                           :

        and                              :

GARON TRAWICK                            :
Route 2, Box 626
Hayti, MO  63851                         :

        and                              :

Plaintiffs from North Carolina:          :

PHILLIP R. BARKER                        :
Gela Rd.
Oxford, NC  27565                        :

and                                              :

CHENAY COSTEN
P.O. Box 109                                     :
Sunbury, NC  27979
                                                 :

        and                                      :

PERCY DAVIS
Rt. 1, Box 35                                    :
Hobgood, NC  27843
                                                 :

        and                                      :

SHEILA W. HARVEY
P.O. Box 1233                                    :
Kenansville, NC  28349
                                                 :

        and                                      :

EDISON LAMONT SMITH, Jr.
P.O. Box 889                                     :
Weldon, NC  27890
                                                 :

        and                                      :

LARRY R. WHITT
9696 Dirgis Mine Rd.                             :
Roxboro, NC  27573
                                                 :

        and                                      :

Plaintiffs from Oklahoma:                        :

LAWRENCE L. BRECKENRIDGE
Route 4, Box 142                                 :
Bristow, OK  74010-9119
                                                 :

        and                                      :

GEORGE C. ROBERTS, Jr.
Rt. 4, Box 128                                   :
Holdenville, OK  74848
                                                 :

        and                                      :

Plaintiffs from South Carolina:                  :

ENOCH EDWARDS, JR.
1252 Homestead Drive                             :
Hartsville, SC  29550
                                                 :

        and

12

HEZEKIAH GIBSON                    :
909 Branchview Drive
Manning, SC  29102                 :

    and                            :

WALTER GORE                        :
2121 Frank Gore Road
Little River, SC  29566            :

    and                            :

THEODORE HOUGH                     :
2017 Gum Cir.
Hartsville, SC  29558              :

    and                            :

ANDREW B. JOHNSON                  :
P.O. Box 1362
Lake City, SC  29560              :

    and                            :

CHARLIE MACK                       :
c/o Sandra Mack Kelly
1664 Syracuse Community Road       :
Darlington, SC  29532
                                   :

    and                            :

WALTER TERRELL                     :
c/o Lucy Ibemere
113 Sheridan Drive
Columbia, SC  29223                :

    and                            :

Plaintiffs from Tennessee:         :

DAVID E. BOYD                      :
3590 Harrell Road
P.O. Box 184                       :
Arlington, TN  38002
                                   :

    and                            :

TOM GARY EWELL                     :
210 Price Road
Moscow, TN  38057                  :

    and                            :

13

ROBERT H. TAYLOR                          :
785 Bey Street
Memphis, TN  38114                        :

     and                                  :

JACK TYUS                                 :
562 Keeling Road
Stanton, TN  38069                        :

     and                                  :


Plaintiffs from Texas:                    :

JAMES JENKINS                             :
1101 Springhill Drive
Waco, TX  76705                           :

     And                                  :

Plaintiffs from U.S. Virgin Islands:      :

KIRK A. BENOIT                            :
P.O. Box 976
St. Croix, USVI  00821                    :

     and                                  :

ABERRA BULBULLA                           :
P.O. Box 3845
St. Croix, USVI  00851-3845               :

     and                                  :

CARL CHRISTOPHER                          :
P.O. Box 1220
St. Croix, USVI  00851                    :

     and                                  :

DENNIS CONNELL                            :
P.O. Box 221
St. Croix, USVI  00841                    :

     and                                  :

BENJAMIN JACOBS-EL                        :
P.O. Box 604 Kingshill Sta.
St. Croix, USVI  00841                    :

     and                                  :

VANNICO HANNEY
Plot 116                                    :
St. Croix, USVI  00851
                                            :

        and                                 :

ALPHONSO L. JAMES                           :
P.O. Box 235                                :
St. Croix, USVI  00851
                                            :

        and                                 :

SAMUEL MOORE                                :
P.O. Box 3372                               :
St. Croix, USVI  00851
                                            :

        and                                 :

JOAN NELSON                                 :
P.O. Box 3698                               :
St. Croix, USVI  00851
                                            :

        and                                 :

DELROY A. PETERSEN                          :
P.O. Box 2794                               :
St. Croix, USVI  00851
                                            :

        and                                 :

MARTIN REYNOLDS                             :
P.O. Box 2936                               :
St. Croix, USVI  00841
                                            :

        and                                 :

WAYNE M. SMITH                              :
P.O. Box 5097 S.I.                          :
St. Croix, USVI  00823-5097
                                            :

        and                                 :

LEONA WATSON
CURNEALL WATSON                             :
GAIL CHIANG
No. 1, 2 & 3 Estate Spring Garden           :
St. Croix, USVI  00840
                                            :

        and

Plaintiffs from Virginia:                  :

JAMES B. BEVERLY, Jr.                       :
P.O. Box 522
Burkeville, VA  23922                       :

    and                                     :

MACIO HILL                                  :
P.O. Box 65
Burkeville, VA  23922                       :

    and                                     :

MASHELIA GRANDISON-KIZZIE                   :
23524 Carson Road
Dinwiddie, VA  23841                        :

ON BEHALF OF THEMSELVES AND                 :
ALL OTHERS SIMILARLY SITUATED,
                                            :
           Plaintiffs,
                                            :

    vs.                                     :

                                            :
DAN GLICKMAN, Secretary
THE UNITED STATES DEPARTMENT                :
 OF AGRICULTURE
14th and Independence Avenue, S.W.  :
Washington, D.C. 20250
                                            :
           Defendant.
                                            :

---

### CLASS ACTION COMPLAINT
(FOR DECLARATORY JUDGMENT, REVIEW OF AGENCY
ACTION, VIOLATIONS OF EQUAL CREDIT OPPORTUNITY ACT,
VIOLATIONS OF TITLE VI OF CIVIL RIGHTS ACT OF 1964
AND OTHER RELIEF)

    The individual and representative plaintiffs (listed in the caption) ("plaintiffs"), on behalf of themselves and all others similarly situated, complain of defendant as follows:

### NATURE OF THE CASE

    This case involves defendant's administration, during the period January, 1983, to the filing date of this lawsuit, of

applications by African-American farmers for farm loans and credit and participation in federal farm programs, (referred to hereinafter as, generally, "farm programs"). Plaintiffs contend that defendant, when processing applications of African-American farmers for farm programs (1) willfully discriminated against them, and (2) when, in response, plaintiffs filed written discrimination complaints with defendant, defendant failed, although required by, inter alia, the Civil Rights Act of 1964 and the Equal Credit Opportunity Act, to investigate the complaints. For example, when African-American farmers filed complaints of discrimination with defendant, defendant willfully either (a) avoided processing and resolving the complaints by stretching the review process out over many years; (b) conducted a meaningless, or "ghost investigation", or (c) failed to do anything. These two acts: (1) the discrimination in denial of the application and (2) the failure to properly investigate the discrimination complaints, deprived the African-American farmers, inter alia, of equal and fair access to farm credit and farm programs, and due process, resulting in damages to them.

In May, 1997, defendant's officials admitted that in early 1983, the Reagan administration had quietly disbanded and dismantled the civil rights enforcement arm at United States Department of Agriculture ("USDA") and that discrimination complaints had not been properly investigated since that time (from 1983 to 1997). Two federal reports, issued in February, 1997, verified these facts. At the same time, defendant announced, in a nationwide campaign, that defendant was still receptive to receiving

complaints from black farmers.  Therefore, throughout 1997, black farmers continued to file administrative complaints of racial discrimination with defendant.

On August 28, 1997, black farmers who had been deprived of their due process rights in this regard filed a lawsuit against the USDA in federal court entitled Pigford v. Glickman.  As per the class definition, the Pigford plaintiffs are:

> all black participants in FSA's farm programs who petitioned USDA at any time between January 1, 1983 and February 21, 1997, for relief from acts of racial discrimination visited on them, but who were denied equal protection under the laws of the United States and deprived of due process in the handling of their discrimination complaints.

This definition limited admission into the Pigford class to farmers who filed discrimination complaints prior to February 21, 1997.  As of June 30, 1998, there were 400 named plaintiffs in Pigford v. Glickman.  However, there are hundreds of black farmers who filed administrative complaints with defendant after February 21, 1997 (the cut-off date for the class in Pigford v. Glickman).

On December 8, 1997, defendant acknowledged that 390 black farmers had filed administrative discrimination complaints in 1997, each involving discrimination occurring prior to 1997.  Plaintiffs contend that the vast majority of these complaints were filed after February 21, 1997.

Since these black farmers were not eligible to join Pigford v. Glickman, their filing of administrative complaints with defendant was their sole remedy.

However, on February 11, 1998, the Director of defendant's Office of Civil Rights stated that all discrimination complaints

18

that could not withstand the two-year statute of limitations are time-barred and would not be reviewed. Letter from Lloyd Wright, Acting Director, USDA Office of Civil Rights, to Malcolm O. Harrison, Esq., February 11, 1998, attached hereto as Exhibit A. The Director reiterated this policy on April 30, 1998. Letter from Lloyd Wright to T. Roe Frazer, Esq., April 30, 1998, attached hereto as Exhibit B. These rulings eliminated relief for hundreds of black farmers who filed administrative complaints of racial discrimination after February 21, 1997.

The proposed Class of this lawsuit consists of all black participants in FSA's farm programs who petitioned USDA at any time between February 21, 1997, and the filing date of this lawsuit for relief from acts of racial discrimination visited on them, and who were denied equal protection under the laws of the United States and deprived of due process in the handling of their discrimination complaints.

## JURISDICTION

1.   Jurisdiction is founded upon 15 U.S.C. §1691, 28 U.S.C. 1331, 28 U.S.C. §1343, 28 U.S.C. 2201, 42 U.S.C. 2000d and 5 U.S.C. 706.

## VENUE

2.   Venue lies in this judicial district because the claim arose in this judicial district, and pursuant to 28 U.S.C. 1391(e).

## PARTIES

3.   Plaintiff and proposed Class representative, Cecil H. Brewington ("Brewington"), is an African-American farmer and

resident of Willard, North Carolina.  Mr. Brewington (a) timely applied for various loan programs with defendant during the years 1982 through 1991 and was the subject of willful and continuous racial discrimination, including denial of his applications for farm ownership loans, and refusal to provide operating credit, and appropriate loan servicing, by reason of his race, causing him substantial damages and (b) timely filed a complaint with defendant of these acts of discrimination, which complaint was filed on April 14, 1997, but was not resolved.

4.    Each of the remaining plaintiffs and proposed Class representatives, beginning with the second plaintiff, is an African-American farmer and resident of either Alabama, Arkansas, Georgia, Kansas, Louisiana, Michigan, Mississippi, Missouri, North Carolina, Oklahoma, South Carolina, Tennessee, Texas, U.S. Virgin Islands or Virginia, who (a) timely applied for loans and/or program payments with defendant at any time after January 1, 1983, and was the subject of willful and continuous racial discrimination, and (b) timely filed a complaint or complaints with defendant of these acts of discrimination, which complaint(s) was/were never acted upon pursuant to the applicable law, causing the farmer(s) substantial damages.

5.    Defendant, Dan Glickman, is Secretary of the United States Department of Agriculture ("USDA"), and is the federal official responsible for the administration of the statutes, regulations and programs which are the focus of this action.

HOW DEFENDANT IS ORGANIZED AND,
GENERALLY, THE GOVERNMENT PROGRAMS AT ISSUE

6.    USDA's Farm Service Agency ("FSA") provides commodity program benefits (such as deficiency payments, price support loans, conservation reserve benefits), disaster payments, farm loans and other farm credit benefits to U.S. farmers.  The agency was created in 1994, as a result of a reorganization of USDA, primarily by the merger of the Agricultural Stabilization and Conservation Service ("ASCS", which previously had handled commodity program benefits, price support loans, Conservation Reserve Program ("CRP") payments, disaster payments, and related services) with the Farmers Home Administration ("FmHA", which previously had provided farm loans and other farm credit benefits).

7.    The FmHA was created decades ago to provide loans, credit and technical assistance for farmers.  FmHA made loans directly to farmers or guaranteed the loans made to farmers by private, commercial lenders.   These loans included "farm ownership", "operating", and "continuing assistance" loans, as well as loans that "restructure" existing loans and "emergency disaster" loans.

8.    ASCS was an agency of USDA created to provide services to U.S. farmers under the price support, deficiency payment, CRP, and related programs to stabilize farm income and prices, and to assist in the conservation of land.  It was consolidated into the FSA in 1994.

9.    Defendant is responsible for the administration of the Farm Service Agency (FSA) and previously FmHA & ASCS.  FSA, like

FmHA and ASCS before it, administers the federal farm programs through a three-tiered review system consisting of (1) county offices and committees, (2) state offices and committees, and (3) a federal level of review in Washington, D.C., the National Appeals Division ("NAD"). The local county committees consist of producers from a county who have been elected by other producers in that county; they oversee the county offices. The state committees consist of producers from each state selected by the Secretary of USDA; they oversee the state offices. At the federal level, NAD renders final determinations of administrative appeals. (Prior to the 1994 consolidation, FmHA had its own administrative appeal process.)

HOW FARMERS (1) APPLIED FOR LOANS AND CREDIT WITH FmHA
(2) APPLIED FOR PARTICIPATION IN OTHER FARM PROGRAMS WITH ASCS

10. Traditionally, when a farmer applied for any FmHA loan or program, he went to his county office (formerly the FmHA office), and filled out a Farm and Home Plan (FHP), which required the assistance and guidance of defendant's officials to complete. Assistance and guidance were critical because of the complexity of the programs and forms. This application process was done pursuant to regulations found at 7 C.F.R. 1910, et seq. If the farmer needed an ASCS-type benefit or assistance, he worked with his County Executive Director ("CED") and county committee in applying for participation or benefits. The process was and is done pursuant to ASCS regulations (7 C.F.R. Part 700, et seq.) and Commodity Credit Corporation ("CCC") regulations (7 C.F.R. at 1400, et seq.).

11.   When the FmHA loan application with its supporting documents was completed it was presented to the county committee. If approved, the loan was processed.  The Equal Credit Opportunity Act ("ECOA") prohibits discrimination in credit based on sex, marital status, race, color, age, or national origin, religion, etc. (15 U.S.C. §1691(a)).  If an FmHA loan was denied on discriminatory grounds, the farmer could file a complaint of discrimination with the Secretary of USDA, the FmHA - Equal Opportunity ("EO") office or with the Office of Civil Rights Enforcement and Adjudication ("OCREA"), or both.

12.   With respect to ASCS-type programs, the application was reviewed by the CED and then presented to the county committee.  If approved, the ASCS benefits were awarded.  Title VI of the Civil Rights Act of 1964 prohibits exclusion of participation in federal programs based on race, color or natural origin.  With respect to ASCS-type applications, if a farm program application was denied on discriminatory grounds, the farmer could file a complaint of discrimination with the Secretary of USDA or OCREA.

HOW PLAINTIFFS AND MEMBERS OF THE CLASS WERE DAMAGED --
WHAT DEFENDANT DID IN RESPONSE TO COMPLAINTS OF DISCRIMINATION

13.   Unbeknownst to plaintiffs and members of the Class, defendant disbanded the enforcement ability of EO and OCREA in 1983, leaving defendant with no ability to investigate discrimination complaints.  In a May 25, 1997, *Richmond News Dispatch* article and interview of Lloyd Wright, Director of USDA Office of Civil Rights, Mr. Wright stated that (1) no systematic probes or investigations had been taken since 1983, when the Reagan adminis-

tration disbanded the Civil Rights investigative staff, and (2) that agency regulations and the provisions of the Civil Rights Act of 1964, et al. were violated. Further evidence of defendant's willful failure to investigate discrimination complaints is evident in the February 27, 1997, Office of Inspector General Report ("OIG Report"), and the February, 1997 Civil Rights Action Team Report ("CRAT Report"), both explained below.

14. The Department of Justice (DOJ) was required to ensure that Federal agencies met their Title VI enforcement obligations and provide civil rights protection to persons filing discrimination complaints in the FSA programs. DOJ failed to ensure that defendant met its Title VI obligations.

15. Within USDA, The Policy Analysis and Coordination Center (PACC), an agency under the Assistant Secretary for Administration, was responsible for civil rights compliance and developing regulations for processing program discrimination complaints at USDA. [OIG Report, p. 4] OCREA was responsible for processing program discrimination complaints received by USDA from participants in FSA programs. [OIG Report, p. 4]

16. OCREA was required to forward written complaints from FSA program participants of discrimination to the appropriate agency within USDA asking the agency to attempt conciliation of the complaint. If conciliation was not successful, the agency was to be instructed to perform a preliminary inquiry and make a recommendation of a finding of "discrimination" or "no discrimination". OCREA was to perform its own analysis of the complaint and the preliminary inquiry and make a recommendation to the Assistant

Secretary for Administration on the finding of "discrimination" or "no discrimination".  This process never occurred during the relevant period covered by this lawsuit.  [OIG Report, p. 4]

17.   FSA's Civil Rights and Small Business Staff (CR&SBUS) was responsible for handling program discrimination complaints within FSA.  CR&SBUS never followed proper procedure pursuant to the law during the relevant period covered by this lawsuit.  [OIG Report, p. 5]

18.   The applicable State Civil Rights Coordinator in FSA was responsible for obtaining a conciliation agreement or performing a preliminary inquiry and forward it to CR&SBUS.  If a conciliation agreement was reached with the complainant, CR&SBUS was to forward the agreement to OCREA and recommend the discrimination complaint be closed.  If a preliminary inquiry was performed, CR&SBUS would analyze the information and determine if discrimination was found;  CR&SBUS was to forward the preliminary inquiry and its analysis to OCREA with its determination.  These procedures were never properly followed.

19.   USDA has codified regulations, 7 C.F.R., Part 15 - "Nondiscrimination," which states USDA's policy of nondiscrimination in federally assisted and conducted programs in compliance with Title VI of the Civil Rights Act of 1964.  The regulations should have served as a basis for civil rights compliance and enforcement with respect to participants in FSA programs, however, defendant admits the regulations have long been and still are outdated and never reflected the departmental agencies, programs and laws.  (Emphasis supplied.)  [OIG Report, p. 5]

25

20.  USDA Regulation 4330-1, which is over 12 years old, dated June 27, 1986, set the departmental policy for program civil rights compliance reviews, but does not provide policy and guidance for processing program discrimination complaints.  [OIG Report, p. 5]

21.  On December 12, 1994, in a management alert to the then Office of Civil Rights Enforcement, defendant's Office of Inspector General (OIG) reported problems with how USDA received, processed, and resolved program discrimination complaints.  OIG recommended that "a departmental regulation be promulgated that sets forth the authorities of the Office of Civil Rights Enforcement and that written procedures and controls be established governing the receipt, processing, and resolution of program discrimination complaints within established timeframes".  [OIG Report, p. 5]

22.  The regulation was never published.[1]

23.  After years of abuse and benign neglect of African American farmers, OIG finally undertook an investigation and review, the results of which were released on February 27, 1997, of defendant's program discrimination complaints within FSA as well as 10 other agencies within USDA.  OIG found, inter alia, that the discrimination complaint process within USDA lacked "integrity," and "accountability" was without a tracking system, was in "disorder", did not resolve discrimination complaints, and had a massive backlog:

---

[1]The U.S. Commission on Civil Rights issued a report in June 1996, titled Federal Title VI Enforcement to Ensure Nondiscrimination in Federally Assisted Programs.  This report also had specific findings and recommendations critical of the USDA discrimination complaints processing system.

"The program discrimination complaint process at FSA lacks integrity, direction and accountability. The staff responsible for processing discrimination complaints receives little guidance from management, functions in the absence of any current position descriptions or internal procedures, and is beset with its own personnel EEO problems. The staff also processes discrimination complaints without a reliable tracking system to determine the status of the complaints and, apparently, without deadlines to resolve the complaints. The resulting climate of disorder has brought the complaint system within FSA to a near standstill. Little gets accomplished to resolve discrimination complaints or to make program managers aware of alleged problems within their programs. After developing our own data base of unresolved cases, we determined that as of January 27, 1997, FSA had an outstanding backlog of 241 complaints." (Emphasis supplied) [OIG Report, p. 6]

24.  OIG found that the staff responsible for processing the discrimination complaints consisted of two untrained and unqualified people:

"The FSA staff responsible for processing discrimination complaints, the Civil Rights and Small Business Utilization Staff (CR&SBUS)" has two full-time program specialists working to resolve program complaints. These program specialists are supplemented by an administrative assistant who provides secretarial support and two staff assistants who maintain case files and the tracking system. The two program specialists and the two staff assistants transferred to FSA from the civil rights staff of the former Farmer's Home Administration (FmHA) during the Department's reorganization in October 1995. The staff assistants have been performing analyses of the preliminary inquiries conducted on the complaints, although they are not trained or otherwise qualified to do so. None of the former FmHA employees with CR&SBUS have position descriptions to reflect their current duties and responsibilities, and none have received performance appraisals for fiscal year 1996." (Emphasis supplied) [OIG Report, p. 6]

25.  OIG found a "massive backlog" of unprocessed FSA complaints. [OIG Report, p. 6]

26.  OIG found the FSA files "disorganized" and unaccountable:

"...CR&SBUS was unable to provide us with an accurate number of outstanding complaints or their status. We reviewed the case files and found them generally disorganized. It was difficult for us to readily determine the date of the complaint, the reason it was brought, and the status of its resolution." (Emphasis supplied) [OIG Report, p. 7]

27. OIG found hundreds of FSA cases unresolved:

"Our review at the CR&SBUS and CREA disclosed that, between them, they had listed a total of 272 cases as being active. The oldest case listed dates back to 1986. * * * After resolving all duplications and determining the actual status of the 272 cases, we found that FSA had 241 cases of program discrimination complaints that had not been resolved." (Emphasis supplied) [OIG Report, p. 7]

28. OIG found repeated unaccountability and missing files:

"During our reconciliation of the two agencies' lists, we noted that some cases were listed by one or the other agency but could not be found in its filing system. CR&SBUS listed 32 cases that we could no find in its filing system, and CREA listed 28 cases that we could not find in its filing system. We also noted that CR&SBUS listed cases unknown to CREA. CR&SBUS listed 19 cases that CREA did not list." [OIG Report, p. 7]

29. OIG found there was no reliable method to the processing:

"CREA had officially closed 30 of the 272 cases with findings of no discrimination. CREA had also closed one case with a finding of discrimination, and the complainant was compensated. The case involved the FSA disaster program, and the complainant received the benefits which were at first denied by FSA. Four of the remaining 24 cases had findings of discrimination as determined by CREA and are pending resolution. One of the four complainants has not responded to the Department's written notice regarding filing a claim for compensation. Office of Operations officials are negotiating a settlement with the remaining three complainants." [OIG Report, pp. 7-8]

30. OIG found improperly closed files and improper reviews, and many files with no documentation:

"We found that FSA improperly closed and forwarded 30 complaints to program managers, without notifying the

Department (26 of 30 cases were closed under the old FmHA agency management). The civil rights staff concluded without first receiving concurrence from the Department that these cases were the result of "programmatic discrepancies" (i.e., agency error rather than civil rights violations). Without departmental concurrence with its findings, the agency may not have addressed the legitimate cases of discrimination. CREA has the responsibility to make final determination of program discrimination. FSA may recommend to CREA that cases be closed, but it does not have the authority to close these cases without concurrence from CREA. For example, we noted that in one instance FSA (the former FmHA) incorrectly concluded that a case had only programmatic concerns and closed the case without forwarding it to the Department. Only after a civil rights staff member complained, did FSA process the case as a civil rights discrimination case. The civil rights staff stated in a letter that the allegation of racial discrimination was overlooked. The mix-up was discussed with the Department, which determined that the case should be processed by the civil rights staff. For most of the remaining cases, we found no documentation in the case files at FSA that the Department has reviewed these cases." (Emphasis supplied) [OIG Report, p. 8]

31. OIG found 58% of the FSA civil rights complaint case files were over 1 year old and over 150 cases were almost two years old:

". . . the average age of the 241 cases we consider open because they were not officially closed by the Department.

| No. of Cases | Program | Average Age |
|---|---|---|
| 151 | Ag. Credit (Farm Loans) | 703 Days |
| 40 | Disaster | 485 Days |
| 50 | Others | 482 Days |

Of the 241 open cases, 139 (58 percent) were known to be over 1 year old. Of the 241 cases, 129 (54 percent) are awaiting action in FSA; the remaining 112 cases (46 percent) are in the hands of the CREA staff in USDA's Office of Operations. Sixty-five of the cases at FSA (50 percent) need a preliminary inquiry. Some of these date back to 1993." [OIG Report, p. 8]

32. OIG found no system within FSA for reconciliation or

29

tracking of civil rights complaint cases:

> "CR&SBUS has no procedures in place to reconcile or track the status of complaints after they are forwarded to CREA.  Therefore, CR&SBUS could not tell us the status of complaints at CREA.  As noted above, both CR&SBUS and CREA had different numbers and were not aware of all the outstanding complaints." (Emphasis supplied)  [OIG Report, p. 8]

33.  OIG found no management oversight within FSA with respect to the handling of civil rights complaints:

> "CR&SBUS also does not prepare management reports to inform FSA program managers of alleged problems of discrimination within their programs.  Without this information, program managers may not be aware of potential discrimination in the programs they are responsible for administering." [OIG Report, p. 9]

34.  With respect to defendant's Office of Operations, Civil Rights Enforcement and Adjudication (CREA), OIG found repeated inaccuracies and unaccountability:

> "...that the listing of outstanding cases provided by CREA contained inaccurate information.  In some instances we were unable to locate the case files at CREA that were on its outstanding case list.  Without reviewing the case files, we were unable to verify the status of the complaints.  Also, CREA and FSA had not reconciled their cases, and neither could inform us of the correct number of outstanding cases."

> "CREA does not have controls in place to monitor and track discrimination complaints.  When complaints are received they are logged in, given a case number, and after the agency forwards the preliminary inquiry to CREA, the case is assigned to one of its seven program specialists.  There are no procedures to require the program specialists to follow up on overdue responses from the agency.  We have found that CREA is not following up on discrimination cases it returned to FSA for conciliation or performance of a preliminary inquiry.  CREA advises the agency that it has 90 days to complete its review, but it does not follow up with the agency to determine the status of the complaint." [OIG Report, p.9]

35.  OIG surveyed 10 other USDA program agencies in addition to FSA, to determine the procedures used for processing program discrimination complaints and <u>found the same problems</u>. [OIG Report, pp. 10-11]

36.  OIG compiled a list of outstanding ("open") program discrimination complaints, as late as 1996, within the Department, totaling 271.  [OIG Report, at Attachment A]

37.  At the same time that OIG released its report, a USDA Civil Rights Action Team released a report, dated February, 1997, condemning defendant's lack of civil rights enforcement and accountability which, <u>inter alia</u>, was a cause of the drastic decline in the number of African American farmers.  (The Report is hereinafter referred to as "CRAT"):

> "According to the most recent Census of Agriculture, the number of all minority farms has fallen -- from 950,000 in 1920 to around 60,000 in 1992.  For African Americans, the number fell from 925,000, 14 percent of all farms in 1920 to only 18,000, 1 percent of all farms in 1992." [CRAT, p. 14]

38.  CRAT found a common problem involved minority farmers applying to defendant for loans:

> "The minority or limited-resource farmer tries to apply for a farm operating loan through the FSA county office well in advance of planting season.  The FSA county office <u>might claim to have no applications available</u> and ask the farmer to return later.  Upon returning, the farmer might receive an application <u>without any assistance</u> in completing it, then be asked repeatedly to correct mistakes or complete oversight in the loan application.  Often those requests for correcting the application could be stretched for months, since they would come only if the minority farmer contacted the office to check on the loan processing.  <u>By the time processing is completed, even when the loan is approved, planting season has already passed</u> and the farmer either has not been able to plant at all, or has obtained limited credit on the strength of an expected FSA loan to plant a small crop, usually without the fertilizer

and other supplies necessary for the best yields. The farmer's profit is then reduced." (Emphasis supplied) [CRAT, p. 15]

39.  CRAT found systematic mistreatment of minority farmers:

"If the farmer's promised FSA loan finally does arrive, it may have been arbitrarily reduced, leaving the farmer without enough money to repay suppliers and any mortgage or equipment debts.  In some cases, the FSA loan never arrives, again leaving the farmer without means to repay debts.  Further operating and disaster loans may be denied because of the farmer's debt load, making it impossible for the farmer to earn any money from the farm.  As an alternative, the local FSA official might offer the farmer an opportunity to lease back the land with an option to buy it back later.  The appraised value of the land is set very high, presumably to support the needed operating loans, but also making repurchase of the land beyond the limited-resource farmer's means.  The land is lost finally and sold at auction, where it is bought by someone else at half the price being asked of the minority farmer.  Often it is alleged that the person was a friend or relative of one of the FSA county officials."  (Emphasis supplied) [CRAT, p. 16]

40.  CRAT found insufficient oversight of farm credit to minorities:

"Currently, the Farm and Foreign Agricultural Services (FFAS) Mission Area, which manages the FSA program delivery system, provides ineffective oversight of the local delivery of farm credit services." (Emphasis supplied) [CRAT, p. 16]

41.  CRAT found a lack of diversity in FSA program delivery structure:

"Because of the ways in which State and county committees are chosen and county offices are staffed, FSA lacks diversity in its program delivery structure. Federal EEO and Affirmative Employment laws and policies do not govern the FSA non-Federal workforce except by agency regulation." (Emphasis supplied) [CRAT, p. 18]

42.  CRAT found a lack of minority employees in FSA county offices:

"A recent GAO study indicated that in the 101 counties with the largest concentration of minority

32

farmers, one-quarter had no minority employees in their offices." [CRAT, p. 18]

43. CRAT found lower participation rates and lower approval rates for minorities in FSA programs:

> "Recent studies requested by Congress and FSA have found lower participation and lower loan approval rates for minorities in most FSA programs. Participation rates in 1994 in programs of the former Agricultural Stabilization and Conservation Service (ASCS), particularly commodity programs and disaster programs, were disproportionately low for all minorities. The GAO found that between October 1, 1994 and March 31, 1996, 33 percent of minority applications but only 27 percent of non-minority applications in the Agricultural Conservation Program (ACP) were disapproved. During the same period, 16 percent of minority but only 10 percent of non-minority loans in the direct loan program were disapproved." (Emphasis supplied) [CRAT, p. 21]

44. For some states, the approval rates for farm loans were widely disparate:

> "For example, only 67 percent of African-American loans were approved in Louisiana, compared to 83 percent of non-minority loans. Alabama showed a similar disparity -- only 78 percent of African-American loans approved, compared to 90 percent of non-minority loans." [CRAT, p. 21]

45. CRAT found minorities endured longer loan processing times:

> "Again, however, some States showed consistently longer processing times for minorities. In the Southeast, for example, in several States in took three times as long on average to process African-American loan applications as it did non-minority applications. Similar disparities between non-minority loan processing and American Indian loan processing appeared in records for a number of States included in FSA's Northwest region." [CRAT, p. 21]

46. CRAT found discrimination complaints at USDA were often ignored:

> "Farmers who told the CRAT stories of discrimination and abuse by USDA agencies also described a complaints processing system which, if anything, often

33

makes matters worse. They described a bureaucratic nightmare where, even after they receive a finding of discrimination, USDA refuses to pay damages. They charged USDA with forcing them into court to seek justice, rather than working with them to redress acknowledged grievances. They painfully described the toll these ongoing battles with USDA has taken on their families, and on their health." [CRAT, pp. 22-23)

47. CRAT found decisions favoring farmers routinely not enforced by USDA:

"However, many farmers, especially small farmers, who have managed to appeal their cases to FSA charge that even when decisions are overturned, local offices often do not honor the decision. They claim that decisions favoring farmers are simply "not enforced"." [CRAT, p. 23]

48. CRAT found a lack of USDA regulations for discrimination complaint processing:

"Program discrimination complaints generally fall within two categories: (1) programs conducted directly by a USDA agency, such as USDA loan programs, and (2) federal assisted programs, where USDA does not directly offer services to customers, but recipients of USDA funds do. The recipients must obey civil rights laws, and USDA can be sued under such laws as Title VI, the Rehabilitation Act, IX, the Equal Credit Opportunity Act, and others. CRAT members were informed by OGC that USDA presently has no published regulations with clear guidance on the process or time lines involved in program discrimination complaints. When a farmer does allege discrimination, "preliminary investigations" are typically conducted by the agency that has been charged with violating her or his right." [CRAT, p. 24]

49. CRAT found discrimination complaints often are not responded to by USDA:

". . . USDA doesn't respond even when they do file complaints. In Tulsa, OK. an advocate representing black and American Indian farmers said, "we have filed 72 civil rights complaints. Not one complaint has even been answered." [CRAT, p. 24]

50. CRAT found recordkeeping on discrimination complaints "non-existent" and that a backlog existed:

"The CRAT was unable to gather historical data on program discrimination complaints at USDA because <u>record keeping on these matters has been virtually nonexistent</u>. Complaints filed with the agencies are not necessarily reported to USDA's Civil Rights office.   Some figures are available however, for cases that were open as of December 31, 1996.    The largest number of pending discrimination complaints, as comments at the listening sessions suggests, are concentrated in three agencies at USDA.    There were 205 case pending, representing 42 percent   of the total, against the FSS: 165, or 33.3 percent against the Rural Housing Service (RHS): and 62, or 12.5 percent against the Food and Consumer Services. Sixty three cases, or 12.7 percent of the total, were pending against other agencies.    The Department had a total of 495 pending program discrimination complaints. Approximately one-half of the pending cases are 2 years old or older, verifying farmers contention that complaints  are  being  processed  slowly,  if  at  all. According to the Complaints Processing Division at the Office  of  Operation  (OO),  which  processes  complaints that  make  it  to  the  Department  level.    USDA  averages about  200  new  program  discrimination  complaints  each year.    However,  in  fiscal  year  1996,  an  average  of  only 9 cases were closed per month, or 108 during the year -- increasing  a  backlog  of  program  complaints."  (Emphasis supplied.) [CRAT, pp. 24-25]

51.   CRAT uncovered neglect of and bias against minorities by

USDA, resulting in a loss of farmers' land and income.

"The   recent   Civil   Rights   listening-sessions   re-vealed  a  general  perception  of  apathy,  neglect,  and  a negative bias towards all minorities on the part of most local  USDA  government  officials  directly  involved  in decision making for program delivery.   A reporter at the recent  listening  session  in  Tulsa,  OK.  observed  that minority farmers are not sure which condition "was worse -- being  ignored  by  the  USDA  and  missing  potential opportunities  or  getting  involved  with  its  programs  and facing  a  litany  of  abuses.    Minority  farmers  have  lost significant amounts of land and potential farm income as a  result  of  discrimination  of  FSA  programs  and  the programs  of  its  predecessor  agencies,  ASCS  and  FmHA. Socially disadvantaged and minority farmers said USDA is part of a conspiracy to take their land and look to USDA for some kind of compensation for their loses."  [CRAT, p. 30]

52.   CRAT   found   USDA   the   fifth   worst   (of   56   government

agencies) in hiring minorities:

"According to the US Department of Labor, between 1990 and 2000, women, minorities, and immigrants will account for 80 percent of the United States labor force growth. The "Framework for Change: Work Force Diversity and Delivery of Programs," a USDA report released in 1990, found that USDA had a need to remedy under-representation in its workforce by providing equal employment and promotion opportunities for all employees. When this statement was made, USDA ranked 52 out of 56 Federal agencies in the employment of minorities, women, and individuals with disabilities." [CRAT, p. 33]

53.   CRAT found the lack of diversity at USDA adversely affects program delivery to minorities:

"USDA's workforce does not reflect the diversity of it customer base. The lack of diversity in field offices adversely affects program delivery to minority and women customers of USDA." [CRAT, p. 45]

54.   CRAT found a lack of resources at USDA to ensure fair and equitable (non-discriminatory) program delivery to farmers:

"The Assistant Secretary for Administration is USDA's senior official responsible for civil rights. Although that position has the responsibility for civil rights policy and compliances, it does not have the authority or resources necessary to ensure that programs are delivered and employees are treated fairly and equitably." [CRAT, p. 46]

55.   CRAT found enforcement of civil rights at USDA in program delivery lacking:

"Another problem with enforcing civil rights in program delivery is fragmentation. Agency civil rights directors have a number of responsibilities. For example, USDA agencies each perform some complaint processing functions. However, the Commission noted that the respective roles of OCRE and the agencies were not clearly defined. The Commission also found that OCRE was providing technical assistance to agencies on civil rights statutes, not proactively, but only when requested." [CRAT, p. 51]

56.   CRAT found a lack of civil rights specialists and knowledge for program-related civil rights issues at USDA:

"The Civil Rights Commission's report on the lack of Title VI enforcement also pointed to USDA's lack of

36

civil rights specialists in program-related civil rights issues. Many of the Department's civil rights resources are devoted to processing of employment discrimination complaints. Of the current staff in the Department's two civil rights offices, two-thirds work on EEO complaints. That means only a small percentage of USDA's civil rights staff works on civil rights issues relating to program delivery. According to the Commission, the 1994 civil rights reorganization was deficient because OCRE did not separate internal and external civil rights issues into separate offices. The Commission predicted that "a probable consequence is that USDA's Title VI enforcement program may suffer as OCRE responds to pressures to improve USDA's internal civil rights program." It recommended that USDA establish "two separate units, with different supervisory staff," one for internal and one for external civil rights issues." [CRAT, p. 54]

57. CRAT found defendant's counsel hostile to civil rights, if not racist:

"The perception that the Office of the General Counsel [at USDA] is hostile to civil rights has been discussed earlier in this report. OGC's legal positions on civil right issues are perceived as insensitive at the least, and racist at worst. Correcting this problem is critical to the success of USDA's civil rights program." [CRAT, p. 55]

58. CRAT found defendant's counsel often have no civil rights experience or education:

"However, the CRAT has found that attorneys who practice civil rights law at [USDA's] OGC are not required to have specialized experience or education in civil rights when they are hired. They acquire their civil rights experience on the job. In addition, most of OGC's lawyers working on civil rights issues work on non-civil-rights issues as well." [CRAT, p. 55]

59. In sum, CRAT concluded that defendant does not support or enforce civil rights:

"USDA does not have the structure in place to support an effective civil rights program. The Assistant Secretary for Administration lacks authority and resources essential to ensure accountability among senior management ranks. There has been instability and lack of skilled leadership at the position of USDA Director of Civil Rights. Dividing up the Department's

37

Civil Rights office between policy and complaints has
further exacerbated the problem.   The division of
responsibility for civil rights among different USDA
offices and agencies has left confusion over enforcement
responsibilities.   Finally,   OGC   is   perceived   as
unsupportive of civil rights." [CRAT, p. 56]

60.  On September  29,  1997,  USDA's  Office  of  Inspector
General issued Phase II of the OIG Report on Civil Rights Issues,
entitled "Minority Participation In Farm Service Agency's Farm Loan
Programs   -  Phase  II"  (hereinafter  "OIG  Report  Phase  II")  which
found, <u>inter</u> <u>alia</u> that (a) defendant has resolved only 32 of the
241  outstanding  discrimination  complaints  reported  in  the  OIG
Report  (back  in  February,  1997)  and  (b)  that  the  backlog  of
discrimination complaints had increased from 241 to 474 for FSA and
from 530 to 984 for all of USDA.

61.  In sum, defendant's willful disregard of, and failure to
properly  investigate,  African-American  discrimination  complaints
began  with  the  disbanding  of  civil  rights  enforcement  functions
back  in  1983,  continued  until  February,  1997,  when  the  current
administration  reorganized  and  reestablished  the  enforcement  staff
of  the  civil  rights  office.   As  demonstrated  by  the  massive  in-
crease  of  backlogged,  unresolved  cases,  since  February,  1997,  the
processing  of  discrimination  complaints  has  gotten  worse.   In fact,
using  the  time  bar  of  statute  of  limitations,  defendant's  civil
rights  office  has  denied  black  farmers,  including  all  plaintiffs  in
this  lawsuit,  an  administrative  review  of  their  cases  on  the  merits
(See  Exhibits  A  and  B,  attached  hereto).

## CLASS ACTION ALLEGATIONS

62. Plaintiffs bring this Class action on behalf of them-selves and all others similarly situated for the purpose of asserting the claims alleged in this Complaint on a common basis. Plaintiffs' proposed Class is defined as all African-American participants in FSA's farm programs who filed a written complaint of racial discrimination with Defendant at any time between February 21, 1997, and the filing date of this lawsuit, for relief from acts of racial discrimination visited on them, as they tried to participate in such farm programs and who, because of the failings in the USDA civil rights complaint processing system described above, were denied equal protection under the laws of the United States and deprived of due process in the handling of their discrimination complaints.

63. Since February 21, 1997, plaintiffs and members of the Class filed not less than 500 discrimination complaints. Plaintiffs base this number, upon the following:

(a) There are 129 named Plaintiffs, each of whom has signed a statement that he filed a discrimination complaint;

(b) On December 8, 1997, Defendant acknowledged that 390 black farmers had filed administrative discrimination complaints in 1997 alone, each involving discrimination occurring prior to 1997; and

(c) accordingly, the estimate of 500 is reasonable.

64. This action is brought and may properly be maintained as a Class action pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and, as appropriate, 23(b)(1), (b)(2) and/or

(b)(3).   This   action   satisfies   the   numerosity,   commonality,
typicality,   adequacy,   predominance   and   superiority   requirement   of
those provisions.

65.   Numerosity of the Class. Fed. R. Civ. P. 23(a)(1).   The
Class is so numerous that the individual joinder of all its members
is   impracticable.   FSA   has   approximately   2,750   county   offices
throughout   the   United   States.   They   process   applications   for
approximately   1,400,000   farmers.   Plaintiffs   believe,   from   its
research,   travel   to   county   offices   throughout   the   south,   interviews
with   over   300   farmers,   and   review   of   defendant's   reports,   that
during   the   period   February   21,   1997,   to   the   filing   date   of   this
lawsuit,   USDA   received   500   discrimination   complaints;   accordingly,
plaintiffs   are   informed   and   believe,   and   on   that   basis   allege,   that
the   Class   includes   500   members.   Class   members   may   be   informed   of
the   pendency   of   this   Class   action   by   published   and   broadcast
notice;   in   addition,   defendant   has   each   Class   member's   farm   number,
address,   application   date   and   payment   results   on   computer,   and   thus
readily available.

66.   Existence and Predominance of Common Questions Of Law
and Fact. Fed. R. Civ. P. 23(a) and 23(b)(3).   Common questions of
law   and   fact   exist   as   to   all   members   of   the   Class   and   predominate
over   any   questions   affecting   only   individual   members   of   the   Class.
These   common   legal   and   factual   questions   arise   from   one   central
issue,   which   does   not   vary   from   Class   member   to   Class   member   and
which   may   be   determined   without   reference   to   the   individual   circum-
stances   of   any   particular   Class   member:   defendant's   institutional
and   systematic   course   of   conduct   in   denying   civil   rights   complain-

ants due process of law in the handling of their complaints.  These common legal and factual questions include, but are not limited to, the following:

a)   Whether and when defendant's officials discriminated against plaintiffs and Class members in failing to process discrimination complaints;

b)   Whether and when defendant's officials discriminated against plaintiffs and Class members in granting credit and providing other program benefits;

c)   Whether defendant's officials failed to provide plaintiffs and Class members equal opportunity to credit or other program benefits;

d)   Whether defendant's institutional and systematic failure to provide plaintiffs and Class members equal opportunity for and access to credit or other program benefits was arbitrary, capricious, an abuse of discretion, and/or in excess of statutory jurisdiction;

e)   Whether defendant's institutional and systematic refusal and denial of plaintiffs' and Class members' rights constitutes a violation of the Civil Rights Act, Title VI, and due process under the Fifth Amendment To The Constitution;

f)   Whether defendant's actions violated plaintiffs' and Class members' statutory rights and access to due process of law pursuant to the Equal Credit Opportunity Act;

g)   Whether plaintiffs and Class members are entitled to (1) a declaration of their eligibility to receive damages or other monetary relief, (2) costs, (3) attorneys fees and (4)

interest from the date they should have been paid to the actual date of payment;

h)   How any and all payments plaintiffs are declared eligible to receive should be equitably allocated among the Class.

These questions of law as to each Class member arose at the same time following the release of the OIG Report and CRAT, in February, 1997, exposing for the first time, the institutional and systematic failure of the discrimination complaint process at USDA.

67.   Typicality of Claims. Fed. R. Civ. P. 23(a)(3).

Plaintiffs' claims are typical of the claims of the members of the Class, all of whom have been denied equal access to credit or other program benefits and due process in the enforcement of their discrimination complaints, who have been subject to defendant's institutional and systematic failure to enforce the civil rights law intended to benefit plaintiffs and members of the Class, due to defendant's arbitrary and unlawful actions.

68.   Adequacy of Representation.   Fed. R. Civ. P. 23(a)(4).

Plaintiffs are adequate representatives of the Class because they are members of the Class and their interests do not conflict with the interests of the members of the Class they seek to represent.   They have retained competent counsel experienced in the prosecution of complex agricultural disputes involving review of adverse agency action, experienced in civil rights litigation, and experienced in class action litigation, and they intend to prosecute this action vigorously for the benefit of the Class.   Mr. Pires, after 7 years at the U.S. Department of Justice, has spent 15 years in private practice representing farmers; he has been lead

counsel in over 50 lawsuits filed on behalf of farmers in federal courts throughout the country. Mr. Fraas has been in private practice representing farmers for 8 years, before that he was Chief Counsel of the House Agriculture Committee, responsible for all USDA programs and laws. Mr. Pires and Mr. Fraas are lead counsel. Joining them as of-counsel, are Dennis C. Sweet, III, and T. Roe Frazer of Langston, Frazer, Sweet & Freese, experienced class action attorneys with extensive experience in discrimination law; J. L. Chestnut of Chestnut, Sanders, Sanders & Pettaway, a nationally known civil rights lawyer, with 38 years of experience in discrimination law and class action litigation; Othello C. Cross of Cross, Kearney & McKissic, an experienced lawyer in the fields of civil rights and agriculture; Hubbard T. Saunders, IV, of Crosthwait Terney, an experienced lawyer in the field of discrimination law; and Gerard R. Lear of Speiser Krause, an internationally known lawyer with extensive experience in complex litigation and class actions. The interests of the members of the Class will be fairly and adequately protected by plaintiffs and their lead counsel and of-counsel. Counsel for plaintiffs have signed retainer agreements with plaintiffs stating that in the event of a successful settlement or judgment (1) 100% of all monies received will go to plaintiffs and Class members; (2) under the Equal Credit Opportunity Act and the Equal Access To Justice Act, counsel will seek recovery of legal fees, expenses and costs not from the farmers but from defendant.

69. <u>Superiority.</u> Fed. R. Civ. P. 23(b)(3). A Class action is superior to other available methods for the fair and efficient

adjudication of this litigation since individual litigation of Class members' claims regarding the defendant's institutional and systematic deprivation of their civil rights as described in this Complaint is impracticable. Even if any Class members could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of the facts of not less than 500 cases would proceed. Individual litigation further presents a potential for inconsistent or contradictory judgments and increases the delay and expenses to all parties and the court system in resolving the legal and factual issues of the case. By contrast, the Class action device presents far fewer management difficulties and provides the benefits of single adjudication of what essentially is one problem, economies of scale, and comprehensive supervision by a single court. Notice of the pendency of any resolution of this Class action can be provided to Class members by publication and broadcast; in addition, defendant has each Class member's farm number, address, application date and payment results on computer, readily available.

70. The various claims asserted in this action are additionally or alternatively certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

a) The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for defendant

44

b)     The prosecution of separate actions by individual Class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or would substantially impair or impede the ability of such non-party Class members to protect their interests; and

c)     Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final declaratory relief with respect to the Class as a whole.

<u>FACTUAL ALLEGATIONS</u>

71.  With respect to plaintiff Cecil C. Brewington:

On a number of occasions beginning in 1982 and extending through 1991, Cecil Brewington applied for farm ownership loans (FOs) from FmHA and was turned down repeatedly by the local FmHA office director in Pender County, North Carolina.  The repeated denial of his loan applications was due to racial discrimination.

The racial discrimination against Mr. Brewington is evidenced by a) the repeated denial of his FO loan applications, b) the lack of assistance provided Mr. Brewington by the local FmHA office staff in the preparation of his FO applications, c) the fact that Mr. Brewington used data from North Carolina State University (NCSU), the Land Grant University in North Carolina, to prepare his FO applications, which were subsequently always denied, d) that on at least one occasion, a professor from NCSU reviewed Mr. Brewington's  FO application and found it to met all requirements, and e) the fact that despite repeated calls to Washington, D. C. to the White House and USDA, and to his

45

Congressman, and being one of the Black Farmers at the House Judiciary Sub-Committee on Civil and Constitutional Rights, Sept. 26, 1984, Mr. Brewington's complaints of racial discrimination were never addressed by USDA/FmHA.

Although Mr. Brewington's FO applications were usually turned down by the FmHA staff for reasons of "lack of cash flow", on at least one occasion the local FmHA did formally review his application and it was rejected for lack of evidence that he (Mr. Brewington) possessed "the experience and/or training needed to succeed in farming,…" This despite the fact that Mr. Brewington had grown up on a farm in the community and the Brewington family had been in farming as long as anyone could remember. When letters of recommendation were provided as evidence of the required experience, Mr. Brewington's application was still denied.

As a result of these discriminatory actions by USDA/FmHA, Mr. Brewington has suffered frustration, humiliation, anxiety, and other symptoms of mental distress because of his inability to obtain redress from USDA for the discriminatory actions taken against him. Additionally, members of his family have been subjected to emotional stress because of USDA/FmHA's refusal to adequately and in a timely manner service Mr. Brewington's FO loan requests when similar requests from Mr. Brewington's white high school class mates were favorable received and the loans provided.

For these racially discriminatory actions against Mr. Brewington and his family, Mr. Brewington has suffered the loss

of the opportunity to engage in farming, his preferred vocation, loss of income, loss of happiness and wellbeing, and endured the pain and suffering that results from racial discrimination.

72.  With respect to all of the plaintiffs each and every plaintiff was denied a loan or program benefit by defendant, or was granted a loan or program benefit on terms different than that of white farmers; said plaintiff filed a written complaint of racial discrimination; said discrimination complaint was never resolved pursuant to the law; and all of these events occurred during the period 1983-1998.

73.  The foregoing allegations are typical as to all Class Members.  Plaintiffs, for the members, and members of the Class will present a _prima facie_ case of discrimination showing (1) defendant's awarding of credit and farm program participation to whites was a pattern different than for plaintiffs and all Class members and (2) a willful failure of defendant to properly investigate the discrimination complaints of plaintiffs and members of the Class.

COUNT I
(Declaratory Judgment)

74.  Plaintiffs, on behalf of themselves and all others similarly situated, reallege all paragraphs above as if fully set forth herein.

75.  An actual controversy exists between plaintiffs and Class members and defendant as to their rights with respect to defendant's farm programs.

76. Plaintiffs and the Class pray that this Court declare and determine, pursuant to 28 U.S.C. 2201, the rights of plaintiffs and Class members under defendant's farm programs including their right to equal credit, participation in farm programs, and their right to full and timely enforcement of racial discrimination complaints.

COUNT II
(Agency Action That Is Arbitrary
Capricious, An Abuse Of Discretion, Not In Accordance
With Law, And In Excess of Statutory Jurisdiction)

77. Plaintiffs, on behalf of themselves and all others similarly situated, reallege all paragraphs above as if fully set forth herein.

78. Defendant's acts of denying plaintiffs and Class members credit or other benefits and systematically failing to properly process their discrimination complaints was racially discriminatory and not authorized nor justified by any statute, regulation, or reasonable interpretation of program procedures, and thus constitutes arbitrary, capricious and unlawful action.

79. Plaintiffs and the Class pray defendant's actions be reversed as arbitrary, capricious, an abuse of discretion, and not in accordance with law, pursuant to 5 U.S.C. 706(2)(A), and in excess of defendant's statutory jurisdiction, pursuant to 5 U.S.C. 706(2)(C), and in violation of the Fifth Amendment of the Constitution.

COUNT III
(Violation of Equal Credit Opportunity Act/
Administrative Procedures Act)

80.  Plaintiffs, on behalf of themselves and all others similarly situated, reallege all paragraphs above as if fully set forth herein.

81.  Defendant's acts of denying plaintiffs and Class members credit and other benefits and systematically failing to properly process their discrimination complaints was racially discriminatory and contrary to the requirements of such Act.

82.  Plaintiffs and the Class pray defendant's actions be reversed as arbitrary, capricious, an abuse of discretion, contrary to 15 U.S.C. 1691(a) and not in accordance with law, pursuant to 5 U.S.C. 706(2)(A), and in excess of defendant's statutory jurisdiction, pursuant to 5 U.S.C. 706(2)(C).

83.  Plaintiffs pray for money damages for plaintiffs and Class members of $500,000,000.

COUNT IV
(Violation of Title VI of the Civil Rights Act of 1964 and
the Fifth Amendment to the Constitution)

84.  Plaintiffs, on behalf of themselves and all others similarly situated, reallege all paragraphs above as if fully set forth herein.

85.  Defendant's acts constitute a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d and the Fifth Amendment to the Constitution.

86.  As a direct and proximate result of defendant's acts, plaintiffs and the Class members sustained damages, including payments rightfully due plaintiffs and the Class members.

87. Defendants pray for appropriate relief under the Administrative Procedures Act, including (1) compensation to plaintiffs and Class members for there having been no proper investigation of their complaints, and (2) specific performance of their program benefits.

WHEREFORE, plaintiffs, on behalf of themselves and all others similarly situated, request this Court enter judgment against defendant as follows:

(1) An Order certifying the Class, and any appropriate subclass thereof, under the appropriate provisions of Fed. R. Civ. P. 23, and appointing plaintiffs and their counsel to represent the Class;

(2) An Order declaring, pursuant to 28 U.S.C. §2201, that plaintiffs and the Class members were denied equal credit and other farm program benefits and full and timely enforcement of their civil rights discrimination complaints.

(3) An Order declaring defendant's actions arbitrary, capricious, an abuse of discretion, not in accordance with the law, and in excess of defendant's statutory authority and jurisdiction;

(4) An Order declaring defendant's actions to be a breach of plaintiffs' rights under the Equal Credit Opportunity Act and the Administrative Procedures Act and declare plaintiffs and the Class members' eligible to receive monetary and other relief of not less than $500,000,000.

(5) An Order declaring defendant's actions to be a breach of plaintiffs' rights under the Civil Rights Act of 1964 and the Fifth Amendment for the Constitution and declare plaintiffs and Class

members eligible to receive monetary and other relief of not less than $500,000,000.

(6) An Order declaring defendant estopped from contending, as a defense to relief to some Class members, that said Class members failed to exhaust their administrative remedies or that a statute of limitations precludes recovery.

(7) An Order granting plaintiffs' and the Class members' attorneys' fees and expenses pursuant to the Equal Credit Opportunity Act, and the Equal Access to Justice Act, costs of suit, and interest from date when plaintiffs and the Class members should have been paid to actual date of payment, and all other relief that the Court determines proper and fair.

Of Counsel:

T. Roe Frazer
LANGSTON, FRAZER, SWEET & FREESE
201 N. President Street
Jackson, Mississippi 39201
(601) 969-1356

J. L. Chestnut
CHESTNUT, SANDERS, SANDERS & PETTAWAY
1405 Jeff Davis Avenue
Selma, Alabama 36701
(334) 875-9264

Othello C. Cross
CROSS, KEARNEY & MCKISSIC
100 South Pine Street
P.O. Box 6606
Pine Bluff, AR 71611
(870) 536-4056

Hubbard T. Saunders, IV
CROSTHWAIT TERNEY
401 East Capitol Street
200 Heritage Building
Jackson, MS 39201-2607

Gerard R. Lear
SPEISER KRAUSE
2300 Clarendon Blvd.
Suite 306
Arlington, VA 22201

Respectfully submitted,

Alexander J. Pires, Jr.
#185009
CONLON, FRANTZ, PHELAN & PIRES
1818 N Street, N.W., Suite 700
Washington, D.C. 20036
(202) 331-7050

Phillip L. Fraas #211219
1025 Thomas Jefferson St., N.W.
Washington, D.C. 20007
(202) 342-1300

Lead Counsel

July 7, 1998

1

US OFFICE PRODUCTS



FEB 11 1998

**United States
Department of
Agriculture**

**Office of the
Assistant Secretary
for Administration**

**Office of
Civil Rights**

**1400 Independence
Avenue SW**

**Washington, DC
20250**

*Via facsimile transmission
(601-968-3866) and first class mail*

FEB

S. Malcolm O. Harrison, Esq.
LANGSTON FRAZER SWEET & FREESE, P.A.
201 North President Street
Jackson, MS 39201

RE    :    USDA Program Discrimination Complaints
            Lodged November 12, 1997 - January 22, 1998

Dear Mr. Harrison:

I am acknowledging receipt of your letters, with attached complaint forms that your clients have lodged, bearing the following dates: November 12, 13, 18, 26, 1997; December 5, 8, 10, 17, 19, 23, 30, 1997; January 2, 8, 14 and 22, 1998.

I am missing one attachment -- the complaint form for John M. Bonner (I have John W. Bonner only).  A replacement copy is requested from your office.

As you probably know, complaints should be filed within 180 days of the date of the discriminatory act under the federally-assisted programs (7 C.F.R. 15.6) or, under federally-conducted programs, from the date the individual knew or should have known of the alleged discrimination (7 C.F.R. 15.51).  Under both provisions, USDA may extend the deadline for good cause shown.  Under both provisions, however, there must be some discrete, allegedly discriminatory act that occurred within the complaint filing period.

I have enclosed charts showing the dates of discrimination each of your clients cited and the date his/her complaint was received in USDA.  In many cases, the span is longer than 180 days.  Where that is the case, please submit a statement from the client explaining the reasons for the delay in filing.  If the explanations are accepted, the Office of Civil Rights will extend the 180-day filing period up to two years.  Thus, a complaint may be deemed timely if some allegedly discriminatory action (or non-action) occurred within two years prior to the complaint filing.  Extension to beyond two years without good cause will be extremely unlikely.

A complaint intake form is enclosed.  I would encourage you and your clients to complete and submit this form to the Office of Civil Rights, rather than the standard letters they have been using.  Additionally, please ascertain whether any of your clients

98 1693

filed the same complaint earlier at USDA, either with the Office of Civil Rights or elsewhere in the USDA structure.

At the intake stage we ensure that USDA has jurisdiction over complaints before they are entered into our system, and then conduct a preliminary inquiry to determine whether the complaint should be exhaustively investigated, settled, dismissed, or decided on the merits. Complainants are an important source of information regarding their discrimination claim. We need your help, and your clients' help, if we are to identify, eradicate, and remedy civil rights violations.

You and each of your clients will receive an acknowledgement letter as we determine whether each individual has timely stated a basis and issue cognizable under the applicable laws. Similarly, each of your clients will receive a copy of this letter and a complaint intake form.

Yours sincerely,

Lloyd E. Wright
Director

Enclosures:
Two sets of charts
Complaint intake form
Information sheet on program complaints

# THE DISCRIMINATION COMPLAINT ADJUDICATION PROCESS

**WHAT:**    Complaints alleging discrimination in the conduct of programs that are managed or assisted by the Department of Agriculture are processed by the Program Investigations Division (PID) of the Office of Civil Rights.

**WHY:**    Various government laws prohibit discrimination based on age, color, disability, familial status, marital status, national origin, race and sex. A complaint can allege discrimination on one or more of these bases. Some programs are not covered in some of the statutes that prohibit specific bases.

**WHERE:**    Mail new complaints, or correspondence about a current complaint to:

> USDA, Office of Civil Rights
> Room 326-W Whitten Building
> Attention: Program Investigations Division
> Washington, D.C. 20250

If you need to fax correspondence, our fax number is (202) 205-2891.

To inquire about the status of your complaint, or any further questions, you can contact PID at (202) 720-5964.

**WHEN:**    You have up to 180 days from the date for the alleged discriminatory incident to file a discrimination complaint.

**HOW:**    PID determines if discrimination occurred using a method developed by the courts. The record needs to establish: (1) the program involved is conducted or assisted by the Department of Agriculture; (2) that the complainant was qualified to participate in the program in question; (3) that the complainant was harmed by the agency's actions or failure to act (for example, an agency failed to approve a loan that the complainant was qualified to receive); (4) that the complaint identifies a prohibited basis of discrimination; and (5) there is an inference that the decision made was based on the motivation the complainant alleges. If the inference does exist, the agency has a chance to show that the actions taken were legitimate and not based on discrimination. PID then Determines the true reason for the decision.

2

US OFFICE PRODUCTS

| Name | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Julius Davis | 1985-95 | 1/5/98 | yes | Ɔ | |
| Percy Davis | 1978-1985 | 1/25/98 | yes | Ɔ | |
| Sarah K. Davis | 1994 | 11/17/97 | yes | D | |
| Ralph Fields | 1989-94 | 10/23/97 | yes | D | |
| Hezekiah Gibson | 1982-present | 1/27/98 | unknown | U | |
| Roosevelt Gibson | 12/97 | 2/3/98 | no | T | N/A |
| Walter Gore | 1985-86 | 2/3/98 | yes | Ɔ | |
| Leon Gray | 1994-96 | 11/17/97 | yes | T | |
| Arthur Griffin | 1991-92 | 1/20/98 | yes | Ɔ | |

2/9/98 ed.

4

2/9/98 ed.

| Name | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days ? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Oscar Griffin | 1992-97 | 12/15/97 | unknown | T | |
| William Hampton | 1991-97 | 1/13/98 | unknown | T | |
| Vanico Hanney | 1995 | 12/16/97 | yes | C | |
| Charles Harris | 1979-87 | 1/26/98 | yes | D | |
| Mary Alice Hayes | 1975 | 12/24/97 | yes | D | |
| Willie Hazelwood | 1960-87 | 12/16/97 | yes | D | |
| Willie M. Head, Jr. | 1989-93 | 12/15/97 | yes | D | |
| Macio Hill | 1979-81 | 1/13/98 | unknown | D | |
| Ben Hillsman, Jr. | Late 1980's | 11/17/97 | yes | D | |

| Name | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days ? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Lee Andrew Howard, Sr. | 1988-89 | 1/5/98 | yes | D | |
| Rubin Hudson | 1979-81 | 12/11/97 | yes | D | |
| Stanley B. Hughes | 1975-present | 11/24/97 | unknown | C | |
| Benjamin Jacobs | 3/89-2/90 | 12/16/97 | yes | D | |
| Alphonso James | 1986-94 | 12/10/97 | yes | D | |
| Leroy James, Sr. | 1990-present | 1/13/98 | unknown | C | |
| Clara Jenkins | none | 1/5/98 | unknown | C | |
| Edward Jenkins | 1989-94 | 12/23/97 | yes | D | |
| James Jenkins | 1982-88 | 12/16/97 | yes | D | |

2/9/98 ed.

6

2/9/98 ed

| Name | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days ? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Leo Jenkins | none | 1/5/98 | unknown | C | |
| Matilda Jenkins | 1986 | 12/15/97 | yes | D | |
| Tobias Jenkins | 1978-85 | 1/13/98 | yes | D | |
| Andrew Johnson | 1982-present | 1/5/98 | yes | T | |
| Charles Johnson | 1980-86 | 12/23/97 | yes | D | |
| Garrett Johnson | none | 1/27/98 | unknown | C | |
| Sammy Johnson | none | 2/3/98 | unknown | C | |
| Freddie Jones | 1991-97 | 1/5/98 | unknown | T | |
| Richard Jones | 1990-94 | 1/5/98 | yes | D | |

7

2/9/98 ed.

| Name | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Willie Lane | 1/2/98 | 2/3/98 | no | T | N/A |
| Don M. Lucas | 1/1/87-3/11/87 | 2/3/98 | yes | D | |
| James McAllister | 1985-89 | 1/20/98 | yes | T | |
| Maurice McGinnis | 1989-96 | 12/15/97 | yes | D | |
| Romeo McKinney | 1966-89 | 11/24/97 | yes | D | |
| Ralph Miller | 1993-95 | 12/15/97 | yes | C | |
| Ted Miller | 1983-95 | 12/11/97 | yes | C | |
| Samuel Moore | 1995-present | 12/16/97 | unknown | C | |
| Joan Nelson | 1992-93 | 11/16/97 | yes | D | |

8

2/9/98 ed.

| Name | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days ? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Joe Patterson | 1986-97 | 12/16/97 | unknown | T | |
| Samuel Patterson | 1985-97 | 12/15/97 | unknown | T | |
| Vernon Pennington | 1980-86 | 12/16/97 | yes | D | |
| Delroy Peterson | 10/84-11/87 | 12/16/97 | yes | D | |
| James Piggs | 1976-84 | 1/5/98 | yes | D | |
| Florence Pickston | 1983-88 | 1/5/98 | yes | D | |
| Lillie Bell Pittman | 1978-84 | 12/15/97 | yes | D | |
| Eddie Reed | 1987-95 | 1/26/98 | yes | D | |
| Henry Reed II | 1977-97 | 12/15/97 | unknown | T | |

2/9/98 ed.

| Name | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Martin Reynolds | 1/96-present | 12/16/97 | unknown | | |
| Frank Richards | 1978-90 | 12/7/97 | yes | | |
| John Sanders | 1989-90 | 12/15/97 | yes | | |
| Arthur Sims | none | 2/3/98 | unknown | | |
| Alexander Scott | 1986-96 | 12/23/97 | yes | | |
| Earl P. Shelby | 7/97 | 12/7/97 | no | | N/A |
| Henry Simmons | 1985-present | 1/20/98 | unknown | | |
| Edison Smith | 1987-88 | 1/5/98 | yes | | |
| E.J. Smith | 1987/88-94 | 12/15/97 | yes | | |

10

2/9/98 ed.

| Name | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days ? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Vernon Smith | 1995-97 | 1/20/98 | unknown | T | |
| Wayne Smith | 1988-present | 12/16/97 | unknown | C | |
| Willie Stonewall | 1992-94 | 12/11/97 | yes | D | |
| Cleotra Tanner | 1980-92 | 12/23/97 | yes | D | |
| Jack Taylor | 1985-97 | 12/16/97 | unknown | T | |
| Johnnie Thomas | 1/92-12/92 | 1/26/98 | yes | D | |
| Bernice Turner | 1973 | 1/26/98 | yes | D | |
| Shain Weatherly | 1995 | 11/17/97 | yes | C | |
| Bobby Wells | 1994-95 | 1/5/98 | yes | D | |

11

| Name | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days ? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Willie Wheeler | 1988-93 | 1/26/98 | yes | D | |
| DeMarcus Williams | 1/97-6/97 | 12/7/97 | no | T | N/A |
| John Williams, Jr. | 1984-85 | 12/23/97 | yes | D | |
| Rapheal L. Williams | 1/95-6/96 | 1/5/98 | yes | T | |
| Yarborough Williams, Jr. | 6/76-present | 12/16/97 | unknown | Y | |
| Paul Wingard | 1959-1971 | 1/26/98 | yes | Y | |
| Roy G. Wood | 1/79-5/79 | 1/20/98 | yes | D | |
| Charles Woodson | 1970-85 | 1/26/98 | yes | D | |

2/9/98 ed.

12

## FSA Complaints -- S. Malcolm O. Harrison, Esq.

| Name | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days? | Filed earlier complaint? | Reason for delay |
|------|--------------------------------------|----------------------|----------------|--------------------------|------------------|
| Alexander, Otis | 1990-1997 | 2/9/98 | unknown | ? | |
| Bacon, Stanley | 1997 | 3/4/98 | unknown | ? | |
| Brown, Joseph | 1975-1990 | 3/4/98 | yes | D | |
| Brunn, Jr., Al | 1988-1995 | 2/20/98 | yes | D | |
| Cole, Jr., Elijiah | missing | 2/23/98 | unknown | C | |
| Clark, Ronald | 1988-1991 | 3/18/98 | yes | D | |
| Davis, Alice | 1940's-1980's | 2/23/98 | yes | D | |
| Grant, Marquis | 1994-1995 | 2/10/98 | yes | D | |

3/24/98 sworn to 2/9/98 ed.

3/24/98 supp. to 2/9/98 ed.

| Name | Date of Violation Cited In Complaint | Date Received in PID | Over-180 days? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Hartzog, Elizabeth | 1985-1986 | 2/23/98 | yes | D | |
| Henderson, George | 1982-1990 | 2/10/98 | yes | D | |
| Jackson, Andrew | 1987-1998 | 2/10/98 | no | T | |
| Kinsey, Bobbie | 1987 or 1988 | 2/10/98 | yes | D | |
| Lucas, Reginald | 1/1/87-3/1/87 | 2/23/98 | yes | D | |
| Lucas, Veda | 1/1/87-3/1/87 | 2/10/98 | yes | D | |
| Madlock, James | 1979-1991 | 3/8/98 | yes | D | |
| Manning, Charles | missing | 2/10/98 | unknown | C | |
| Miller, Curtis | 1992-1993 | 2/10/98 | yes | D | |

3/24/98 supp. to 2/9/98 ed.

| Name | Date of Violation, Cited in Complaint | Date Received in PID | Over 180 days? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Mobley, Aaron | 1985-1995 | 3/18/98 | yes | closed as duplicate of 941202-522, per 4/3/98 letter to Harrison | |
| Perry, Carl | 12/94-2/95 | 3/18/98 | yes | T | |
| Polk, Clarence | 1997 | 2/23/98 | unknown | T | |
| Randall, Mattie | 1998 | 2/10/98 | no | T | |
| Sias, Willie | missing | 2/23/98 | unknown | C | |

3/24/98 supp. to 2/9/98 ed.

| Name | Date of Violation Cited in Complaint | Date Received in PIO | Over 180 days? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Smith, Edward | 1994-1998 | 3/4/98 | no | | |
| Smith, James | 1988-1990 | 3/4/98 | yes | D  closed as duplicate of 971205-1288 (Harrison filed both) | |
| Taylor, Robert | 1975-1997 | 2/10/98 | unknown | T | |
| Washington, Andrew | 1997 | 9/19/97 | no | T | |
| Watson, Jr., James | 1997 | 1/13/98 | unknown | T | |

FSA Complaints — S. Malcolm O. Harrison, Esq.

| NAME | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Barker, Philip R. | 1990 - 1997 | 3/13/98 | unknown | T | |
| Bell III, Tobias | 1981-1983 | 12/01/97 | yes | D | |
| Carthan, James | 1980 - 1983 | 3/20/98 | unknown | D | |
| Carthan, Joseph | 1978 - 1983 | 3/20/98 | unknown | D | |
| Cooper, Albert | 12/96 - 6/97 | 3/27/98 | yes | T | |
| Curry, Jimmy | 1977 - 1994 | 3/20/98 | yes | D | |
| Glenn, Onzie | 1980 - 1982 | 3/13/98 | yes | D | |
| Harvey, Sheila | 1994 -1996 | 3/13/98 | yes | C | |
| Jones, Clem | 1976 - 1998 | 3/31/98 | unknown | T | |
| Hough, Theodore | 1975 - 1997 | 3/27/98 | unknown | T | |

FSA Complaints -- S. Malcolm O. Harrison, Esq.

| NAME | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days? | Filed earlier complaint? | Reason for delay |
|------|--------------------------------------|----------------------|----------------|--------------------------|------------------|
| Lampley, William | 1979 - 1986 | 3/20/98 | yes | ✓ | |
| Lewis, Jr. Elijah | 1980 - 1990 | 3/27/98 | yes | ✓ | |
| McGinnis, Kenzie | 1983 - 1985 | 3/13/98 | yes | ✓ | |
| Moore, Jessie | 1984 - 1985 | 3/27/98 | yes | ✓ | |
| Short, Oliver | 1990 - 1993 | 3/13/98 | yes | ✓ | |
| Straughter, McArthur | 1984 - 1985 | 3/13/98 | yes | ✓ | |
| White, Michael | 1994 - 1995 | 3/23/98 | yes | ✓ | |
| Whittington, Carl | 1990 - present | 3/23/98 | unknown | ✓ | |
| Winters, Freddie | 1983 - 1997 | 3/23/98 | unknown | ✓ | |



Corr File
PIGFORD

United States
Department of
Agriculture

Office of the
Assistant Secretary
for Administration

Office of
Civil Rights

1400 Independence
Avenue SW

Washington, DC
20250

APR 3 0 1998

*Via facsimile transmission
(601-968-3866) and first class mail*

T. Roe Frazer, II
LANGSTON FRAZER SWEET & FREESE, P.A.
201 North President Street
Jackson, Mississippi 39201

RE   :   USDA Program Discrimination Complaints
Lodged November 12, 1997 - March 17, 1998

Dear Mr. Frazer:

I understand that attorney Malcolm Harrison has departed from your firm. During
the period noted above, Mr. Harrison forwarded 163 potential discrimination complaints
to the Office of Civil Rights for processing. Another potential discrimination complaint
was filed by Mr. Tobias Bell, III who advised this office that he would be represented by
Mr. Harrison. We have not accepted these cases because they appear to have been
untimely filed. I wrote Mr. Harrison about this issue on February 11 and received a
March 16 response. This is how we will now proceed.

As you probably know, complaints should be filed within 180 days of the date of
the alleged discriminatory act under the federally-assisted programs (7 C.F.R. 15.6) or,
under federally-conducted programs, from the date the individual knew or should have
known of the alleged discrimination (7 C.F.R. 15.52). USDA has often extended the time
frame to two years, in recognition of the two-year statute of limitations for bringing suit
under the Equal Credit Opportunity Act. We have now decided to dismiss those
complaints filed beyond the two-year statute of limitations.

The attached charts show the dates of discrimination each of your clients cited and
the date his or her complaint arrived at USDA. I have annotated those cases filed more
than two years after the alleged discrimination with a "D." Where the information from
your client was insufficient to make that calculation, I have annotated the case "U."
Where the information appears to indicate a timely filing, the case is marked "T."
Several "U" cases allege discrimination "to the present." Those matters have also been
classified as "U" because the allegation is too vague to discern whether some discrete,
allegedly discriminatory act occurred within the complaint filing period.

98 1693

This Office needs additional information for your client's cares denoted "D" and "U" in order to determine whether an allegedly discriminatory USDA action (or inaction) occurred within two years of their filing dates. We recommend that you use this Office's enclosed complaint intake form to provide this information with the required specificity. Insofar as we requested the same information in our February 11 letter, we will now dismiss the "D" and "U" cases if we do not receive that information within 20 days of this letter's date.

Additionally, if any client's claim is against the Farm Service Agency (FSA) and exceeds the two-year filing time frame, please inform us as to whether that individual filed an earlier USDA complaint alleging race discrimination by FSA with respect to the provision of credit. A copy of the prior discrimination complaint and processing documents, or a certified statement detailing the filing and processing of the prior complaint, should be supplied to our Office.

You and each of your clients will receive an acknowledgment letter if we determine that the individual has timely stated a basis and issue cognizable under our laws. Similarly, each of your clients will receive a copy of this letter as well, annotated to show into which grouping his or her complaint falls.

I appreciate your cooperation in these matters. The Office of Civil Rights can be reached at 202-720-5212 should you have questions or concerns, or you may contact Susan Reilly, Associate Chief, who is managing this case load in the Program Investigations Division. Her number is 202-720-5964.

Sincerely,

Lloyd E. Wright
Director

Enclosures:

        Four charts
        Copy of intake complaint form



**OFFICE OF CIVIL RIGHTS**
**PROGRAM INVESTIGATIONS DIVISION**
**COMPLAINT DETERMINATION DATA**

Please complete this form by providing the missing information:

Case number *(to be assigned by USDA)*:

Name: _____

Address: _____

Telephone number: Home (_____) _____     Work (_____) _____

Appropriate time to call you: _____

Attorney Representative: _____

Address: _____

Telephone Number: _____

*Optional Information*:   Your race: _____          Your sex: _____

USDA Agency Involved: _____

**Alleged discriminatory actions by agency**: Please describe the decisions or actions you believe were discriminatory, the dates each incident occurred, and the USDA offices/officials with whom you dealt. Please be concise, but add additional pages as necessary:

1.   Action/Inaction: _____

_____

_____

_____

_____

_____

Date of Action/Inaction: _____

County Office: _____

County Official: _____

FSA Complaints -- S. Malcolm O. Harrison, Esq.

| Name | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days ? | Filed earlier complaint? | Reason for delay |
|---|---|---|---|---|---|
| Roy H. Adam | 1985-93 | 12/16/97 | yes | D | |
| Herbert C. Allan, Sr | 1983-97 | 12/15/97 | unknown | T | |
| Donnie Bell | 1982-present | 12/15/97 | unknown | U | |
| Kirk Benoit | 6/93-12/95 | 10/23/97 | yes | T | |
| James Beverly, Jr. | 1/80-2/85 | 1/5/98 | yes | D | Filed in 1985 No response |
| Cynthia Blackshire | 1986-88 | 1/26/98 | yes | D | |
| John W. Bonner | 1983 | 12/10/97 | yes | D | |
| Milton Boyd | 1985-91 | 11/17/97 | yes | D | |
| W.E. Brandon | 2/80-3/85 | 1/26/98 | yes | D | |

1

| Name | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days? | Filed earlier complaint? | Reason for delay |
|------|------|------|------|------|------|
| Eddie Carthan | 1994-96 | 11/17/97 | yes | T | |
| Willie Clark | 1992-93 | 12/23/97 | yes | D | |
| Houston Coleman | 1/83-1/86 | 1/27/98 | yes | ∧ | |
| Robert Coleman | 2/82-5/87 | 1/27/98 | | D | |
| Andrew Cooper | 1989-91 | 1/27/98 | yes | D | |
| Dennis Cownell | 1990-97 | 12/16/97 | unknown | T | |
| Stanford Crossman | 1994-97 | 12/16/97 | unknown | C | |
| Alfort Davis | 1991-present | 12/23/97 | unknown | C | |
| Bobby Davis | 1983-84 | 1/5/98 | yes | D | |

2/9/98 ed.

3

| Name | Date of Violation Cited in Complaint | Date Received in PID | Over 180 days ? | Filed earlier complaint? | Reason for delay |
|------|--------------------------------------|----------------------|-----------------|--------------------------|------------------|
| David Brown, Jr. | 1990 | 11/17/97 | yes | D | |
| Leon Brown | 1989-96 | 1/27/98 | yes | V | |
| Valley Brown | 1994-95 | 1/27/98 | yes | D | |
| Aberra Bulbulla | 1994-97 | 12/16/97 | unknown | T | |
| Allie Bullock | 70's-80's | 12/7/97 | yes | D | |
| Reginald Burns | 1985 (FSA loan) 11/8/97 RHS application? Separate claim? | 11/17/97 | yes | D FSA  T RHS | |
| James L.B. Caesar | 1995-96 | 12/16/97 | yes | T | |
| Samuel Cain | 4/15/94-10/20/94 | 1/5/98 | yes | D | |

JS 44
(Rev. 07/89)

CIVIL COVER SHEET

This JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.
(SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

CECIL C. BREWINGTON et al.

## DEFENDANTS

DAN GLICKMAN, Secretary

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Alexander J. Pires
Conlon, Frantz, Phelan, Pires & Leavy
1818 N Street, N.W., Ste. 700
Washington, D.C.  20036
Ph: (202)331-7050

CASE NUMBER  1:98CV01693

JUDGE: Paul L. Friedman

DECK TYPE: Civil General

DATE STAMP: 07/07/98

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

The United States Department of Agriculture (USDA) violated the Civil Rights Act, the due process clause of the Fifth Amendment, Title VI and the Equal Credit Opportunity Act by not processing discrimination complaints btwn. 1983 & 1997.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Other | | | |

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE PAUL L. FRIEDMAN

DOCKET NUMBER 97-1978
Pigford v. Glickman

DATE 7/7/98

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

FPH-LEX 3/91

Category in which case belongs:

_____ A.   Anti-Trust Cases

_____ B.   Malpractice Cases (Legal/Medical)

_____ D.   Temporary Restraining Orders and Preliminary Injunctions (If a TRO is requested in an Anti-Trust, the A designation will govern)

_____X_____ E.   General Civil Cases (Check only one)

                       _X___ General Civil Cases

                       _____ Three Judge Court Case

_____ F.   Pro Se General Civil Cases

_____ G.   Habeas Corpus Cases

_____ H.   Equal Employment Opportunity Cases (If filed by a pro se litigant, the case is to be assigned from this H Category)

_____ I.   Freedom of Information Act Cases (If filed by a pro se litigant, the case, is to be assigned from this I Category)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NOTICE OF DESIGNATION OF RELATED CIVIL/MISCELLANEOUS CASES
PENDING IN THIS OR ANY OTHER UNITED STATES COURT

Civil Action No. 98  1693
(To be supplied by the Clerk)

### NOTICE TO THE PLAINTIFF:

Pursuant to Rule 405(b)(2), you are required to prepare and submit this form at the time of filing any civil or miscellaneous case which is related to any pending case(s) or which involves the same parties and relates to the same subject matter of any dismissed related case(s). This form must be prepared in sufficient quantity to provide one copy for the Clerk's records, one copy for the Judge to whom the case is assigned and one copy for each defendant, so that you must prepare 3 copies for a one defendant case, 4 copies for a two defendant case, etc.

### NOTICE TO DEFENDANT:

Rule 405(b)(2) of this Court requires that you serve upon the plaintiff and file with your first responsive pleading or motion any objection you have to the related case designation.

### NOTICE TO ALL COUNSEL

Rules 405(b)(3) of this Court requires that as soon as an attorney for a party becomes aware of the existence of a related case or cases, such attorney shall immediately notify, in writing, the Judges on whose calendars the cases appear and shall serve such notice on counsel for all other parties.

_____

The plaintiff or counsel for plaintiff will please complete the following:

1.   RELATIONSHIP OF NEW CASE TO PENDING RELATED CASE(S).

A new case is deemed related to a case pending in this or another U.S. Court if the new case:   [Check appropriate box(es) below.]

[  ]   (a)   relates to common property

[✓]   (b)   involves common issues of fact

[✓]   (c)   grows out of the same event or transaction

[  ]   (d)   involves the validity or infringement of the same patent

[  ]   (e)   is filed by the same pro se litigant

2.   RELATIONSHIP OF NEW CASES TO DISMISSED RELATED CASE(S).

A new cases is deemed related t a case dismissed, with or without prejudice, in this or any other U.S. Court, if the new case involves the same parties and relates to the same subject matter.

Check box if new cases is related to a dismissed case:   [  ]

3.   NAME THE U.S. COURT IN WHICH THE RELATED CASE IS FILED (IF OTHER THAN THIS COURT):

_____

4.   CAPTION AND CASE NUMBER OF RELATED CASE(S).   IF MORE ROOM IS NEEDED PLEASE USE THE OTHER SIDE.

PIGFORD ET AL.   vs   GLICKMAN   C.A. No. 97-1978

_____
Signature of Plaintiff (or counsel)

CO-932
Rev. 1/96